[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12713
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 25, 2010
JOHN LEY
CLERK

Agency No. A098-324-994

REYNA GARCIA-ACUNA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 25, 2010)

Before EDMONDSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Reyna Garcia-Acuna, a native and citizen of Mexico, seeks review of the Bureau of Immigration Appeals' ("BIA's") order affirming the Immigration Judge's ("IJ's") denial of cancellation of removal under 8 U.S.C. § 1229b(a) and ordering her removed. For the reasons set forth below, we dismiss the petition in part, and deny in part.

## I.

The Immigration and Naturalization Service issued a Notice to Appear, ("NTA"), charging that Garcia-Acuna was subject to removal under INA § 212(a)(6)(A)(i), as an alien who entered the United States without formal admission or parole. Garcia-Acuna admitted the allegations contained in the NTA and filed an application for cancellation of removal, indicating that her mother, father, and three sisters were lawful permanent residents ("LPRs"), and that her daughter and three grandchildren were United States citizens.

At a hearing before the IJ, Garcia-Acuna testified that she lived with her four children, and that her six-year old daughter, Catherine, was an American citizen who spoke English and Spanish. Garcia-Acuna also had four sisters and one brother who lived in the United States. Garcia-Acuna testified that she lived close to her parents and visited them three times a week to help care for them. She explained that her father was diabetic and her mother had osteoporosis.

Pedro Garcia-Ocampo, Garcia-Acuna's father, testified that his other

2

daughters lived further away than Garcia-Acuna, and that the whole family was together only on Saturdays and Sundays. Garcia-Ocampo stated that Garcia-Acuna helped his wife, who could not do any work at home, by cooking her meals. Garcia-Ocampo worked at a nursery 40 hours a week, earning 7 dollars an hour. His wife did not work. Garcia-Ocampo stated that his other children lived in the same city as him and helped him and his wife on weekends.

Gloria Garcia-Acuna, Garcia-Acuna's sister, explained that she was responsible for taking her father to his medical appointments, because she was the one who had a driver's license. She stated that Garcia-Acuna worked every day but made time to go to her parents' house to help them with chores, cooking, cleaning, and laundry. She stated that her other three sisters did not drive and had a lot of responsibilities with their own children. Gloria stated that she did not work.

The IJ denied Garcia-Acuna's application for cancellation of removal, finding that her qualifying relatives would not suffer exceptional and extremely unusual hardship if she were removed to Mexico, because other family members remaining in the United States could "take up the slack" in caring for them.

Garcia-Acuna filed an appeal with the BIA, arguing that the IJ failed to consider her parents' health problems, advanced age, and poor financial situation, and "failed to address the 'totality of the burden' standard."

3

The BIA determined that the IJ did not err in concluding that Garcia-Acuna failed to demonstrate that her qualifying family members would suffer extreme and unusual hardship if she were removed to Mexico. It noted that Catherine had no medical or developmental issues and that Garcia-Acuna's siblings lived near her parents and could provide assistance. The BIA also pointed out that Garcia-Acuna's sister already took primary responsibility for her parents' medical issues. Based on these findings, the BIA dismissed Garcia-Acuna's appeal.

**II.**

When examining a petition for review, we "must first consider whether we have subject matter jurisdiction to hear the petition at all." *Resendiz-Alcaraz v. U.S. Att'y Gen.*, 383 F.3d 1262, 1266 (11th Cir. 2004). We review subject matter jurisdiction *de novo*. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007).

Under 8 U.S.C. § 1229b, the Attorney General may cancel the removal of a nonpermanent resident who establishes, *inter alia*, that removal would cause "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). Section 1252(a)(2)(B)(i) of Title 8 provides that no court has jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b . . . of this title." 8 U.S.C.

4

§ 1252(a)(2)(B)(i). Nevertheless, we retain jurisdiction to consider constitutional claims or legal questions related to cancellation of removal. 8 U.S.C. § 1252(a)(2)(D); *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221-22 (11th Cir. 2006). We have held that the BIA's "exceptional and extremely unusual hardship determination is a discretionary decision not subject to review." *Martinez*, 446 F.3d at 1221.

### III.

In her brief, Garcia-Acuna first argues that the BIA erred in finding that her parents could rely on other family members to take care of them if she were removed to Mexico. This argument is a purely factual argument, because it challenges a factual finding made by the BIA. Although Garcia-Acuna attempts to frame this issue as a legal argument by asserting that the BIA "mischaracterized" the evidence, this argument is simply an invitation to reevaluate the evidence presented to the IJ and determine whether the BIA's factual conclusion, that other members could care for Garcia-Acuna's parents, was erroneous. Accordingly, because this issue presents no legal or constitutional questions, we lack jurisdiction to consider this argument. *See* 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(D).

Next, Garcia-Acuna argues that the BIA failed to address the fact that her parents lived below the poverty level. Garcia-Acuna cites no law that requires the BIA to consider this factor when determining whether the petitioner's removal

would result in "exceptional and extremely unusual hardship."  Garcia-Acuna's argument that the BIA should have weighed this fact when making its discretionary determination is not constitutional or legal in nature, and, therefore, we have no jurisdiction to consider it.  *See* 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(D).

Finally, Garcia-Acuna argues that the BIA erred by ignoring the "totality of the burden" standard set forth in *In re Recinas*, 23 I&N Dec. 467 (BIA 2002), in deciding whether she met the "exceptional and extremely unusual hardship" requirement.  Assuming without deciding that this argument presents a question of law and we have jurisdiction to review it, the issue is, nevertheless, meritless.  The BIA, in its order denying relief, cited *Recinas* in support of its determination that Garcia-Acuna failed to show that her removal would result in "exceptional and extremely unusual hardship."  Accordingly, we dismiss Garcia-Acuna's petition in part and deny the petition in part.

**PETITION DISMISSED IN PART, DENIED IN PART.**